# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| F.L. CRUTCHFIELD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08CV561 |
| | ) | |
| IMMUNOSCIENCE, INC., and | ) | |
| SATEESH N. APTE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| IMMUNOSCIENCE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09CV973 |
| | ) | |
| ELIZABETH SZILAGYI and | ) | |
| SZ*B CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on the motion of Defendants Elizabeth Szilagyi and SZ*B Corporation to dismiss Plaintiff's amended complaint. (No. 1:09CV973, Docket No. 17.)[1] Defendants' motion is based upon an alleged lack of subject matter and personal

---

[1] Citations to the record will be to lead case number 1:08CV561 unless otherwise noted.

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(2). For the reasons stated herein, the Court concludes that Defendants' motion to dismiss should be denied.

## FACTS, CLAIMS, AND PROCEDURAL HISTORY

These two consolidated actions result from the attempt by ImmunoScience, Inc., to obtain financing for its business operations through Elizabeth Szilagyi and her company, SZ*B Company. Ms. Szilagyi became a member of the ImmunoScience board of directors. Mr. Sateesh N. Apte is the founder of ImmunoScience and has served as a board member and its President and CEO since 1995. Mr. Lorenzo Crutchfield became a member of the ImmunoScience board of directors in 1996 and was appointed chairman of the board in 2006. In 2006, Ms. Szilagyi and SZ*B appointed Mr. Michael McNamara to act as their representative in dealings with ImmunoScience in relation to providing capitalization funding. Mr. McNamara was also president of Intravacc, Inc., which produces a product that is complementary to an ImmunoScience product.

The following facts are taken from the first amended complaint of ImmunoScience. (No. 1:09CV973, Docket No. 14, First Amended Complaint ("First Am. Compl.").) In November 2005, Ms. Szilagyi and SZ*B entered into a contract with ImmunoScience to provide it with approximately $22 million in funding. (*Id*. at 3.) Mr. Crutchfield was authorized by the ImmunoScience board of directors to represent the interests of ImmunoScience in the opening of Swiss bank and investment accounts during the funding process by Ms. Szilagyi and SZ*B, to act as the ImmunoScience signatory of such accounts,

-2-

Case 1:08-cv-00561-NCT-PTS   Document 83   Filed 01/30/12   Page 2 of 15

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(2). For the reasons stated herein, the Court concludes that Defendants' motion to dismiss should be denied.

## FACTS, CLAIMS, AND PROCEDURAL HISTORY

These two consolidated actions result from the attempt by ImmunoScience, Inc., to obtain financing for its business operations through Elizabeth Szilagyi and her company, SZ*B Company. Ms. Szilagyi became a member of the ImmunoScience board of directors. Mr. Sateesh N. Apte is the founder of ImmunoScience and has served as a board member and its President and CEO since 1995. Mr. Lorenzo Crutchfield became a member of the ImmunoScience board of directors in 1996 and was appointed chairman of the board in 2006. In 2006, Ms. Szilagyi and SZ*B appointed Mr. Michael McNamara to act as their representative in dealings with ImmunoScience in relation to providing capitalization funding. Mr. McNamara was also president of Intravacc, Inc., which produces a product that is complementary to an ImmunoScience product.

The following facts are taken from the first amended complaint of ImmunoScience. (No. 1:09CV973, Docket No. 14, First Amended Complaint ("First Am. Compl.").) In November 2005, Ms. Szilagyi and SZ*B entered into a contract with ImmunoScience to provide it with approximately $22 million in funding. (*Id*. at 3.) Mr. Crutchfield was authorized by the ImmunoScience board of directors to represent the interests of ImmunoScience in the opening of Swiss bank and investment accounts during the funding process by Ms. Szilagyi and SZ*B, to act as the ImmunoScience signatory of such accounts,

-2-

Case 1:08-cv-00561-NCT-PTS   Document 83   Filed 01/30/12   Page 2 of 15

and to exercise transactional control over such accounts. (*Id*.) Ms. Szilagyi was aware of the limited nature of this authorization for Mr. Crutchfield from the board. (*Id*.)

ImmunoScience alleges that as time passed, Ms. Szilagyi and SZ*B made little or no progress toward the promised capitalization funding because they lacked the intent and capacity to provide such funding. (*Id*. at 5.) ImmunoScience further alleges that Ms. Szilagyi breached her fiduciary duties to it (first claim for relief), engaged in a civil conspiracy with Mr. Crutchfield and one or more other persons to deprive ImmunoScience of its property and rights (second claim for relief), and breached the contract to provide ImmunoScience with funding (third claim for relief). (*Id*. at 8-11.)

In the complaint of Mr. Crutchfield against ImmunoScience and Mr. Apte (No. 1:08CV561), Mr. Crutchfield alleges that he entered into two loan and stock option agreements with ImmunoScience pursuant to which ImmunoScience was to issue to him stock options. (Docket No. 2, Crutchfield Complaint ("Crutchfield Compl.").) These two agreements are the July 2006 agreement and the March 2007 agreement. Mr. Crutchfield alleges that he has performed all of his duties under these contracts, but that ImmunoScience refuses to issue him the promised stock options. (*Id*. at 2.) Thus, Mr. Crutchfield's first two causes of action are that ImmunoScience breached these contracts. (*Id*. at 2-5.) His third cause of action is for unjust enrichment because ImmunoScience allegedly has failed to reimburse him for costs and fees associated with his financing activities on behalf of ImmunoScience. (*Id*. at 5-6.) Mr. Crutchfield's fourth cause of action is for breach of

-3-

Case 1:08-cv-00561-NCT-PTS Document 83 Filed 01/30/12 Page 3 of 15

fiduciary duty against Mr. Apte. (*Id*. at 7-8.) His fifth cause of action is for unfair and deceptive trade practices, and his sixth is for piercing the corporate veil to hold Mr. Apte individually liable. (*Id*. at 8-10.) Mr. Crutchfield seeks specific performance – issuance of the stock options – in his seventh cause of action. (*Id*. at 10.) Finally, his eighth cause of action is a request for a permanent injunction against Defendants ImmunoScience and Mr. Apte to prevent them from taking any action against his ownership interest in the stock options. (*Id*. at 11.)

ImmunoScience has counterclaimed against Mr. Crutchfield. (No. 1:08CV561, Docket No. 40, "ImmunoScience counterclaim.") Its first claim is that Mr. Crutchfield breached his fiduciary duties to ImmunoScience. (*Id*. at 8.) The second claim is that Mr. Crutchfield conspired with Ms. Szilagyi and Mr. McNamara to deprive ImmunoScience of its property and rights. (*Id*. at 9.)

## DISCUSSION

### A. Subject Matter Jurisdiction

Defendants Szilagyi and SZ*B Corporation first move to dismiss the amended complaint of Plaintiff ImmunoScience on grounds that the parties are not completely diverse. (No. 1:09CV973, Docket No. 18, Defs.' Br. in Supp. of Mot. to Dismiss, at 5-7.) Defendants base this argument on the California citizenship of ImmunoScience and the California citizenship of Mr. McNamara. (*Id*.) Defendants recognize that Mr. McNamara is not a named Defendant in Plaintiff's amended complaint. They contend, however, that because

Plaintiff named Mr. McNamara as a defendant in the original complaint (No. 1:09CV973, Docket No. 1, Complaint), has not filed a stipulation of dismissal pursuant to Fed. R. Civ. P. 41, and no court order has dismissed him as a defendant, he remains a party to the action. (*Id*.) Finally, Defendants argue that even if such a stipulation of dismissal were filed now, the Court should determine whether diversity existed at the time the action was filed. (*Id*.) According to Defendants, Mr. McNamara's status as a defendant at that time destroys diversity jurisdiction. (*Id*.)

Plaintiff argues that because it filed its amended complaint pursuant to Fed. R. Civ. P. 15 as a matter of course and properly dropped Mr. McNamara as a defendant, his citizenship is no longer to be considered for diversity purposes. (No. 1:09CV973, Docket No. 21, Pl.'s Br. in Resp. to Defs.' Mot. to Dismiss Am. Compl., at 5-7.) Plaintiff has the better argument on this point. Rule 15 allows amendments that add or drop parties. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 468 (4th Cir. 2007) ("[A]mendments simply adding or dropping parties . . . fall within the ambit of [Rule 15].") (quoting 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1498 (2d ed. 1990)). Moreover, the amendment in this case relates back to the filing of the action pursuant to Rule 15(c). *See E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.,* 241 F.3d 154, 163 (2d Cir. 2001) ("As a general matter, it is widely accepted that amendments to cure subject matter jurisdiction relate back."). Therefore, Mr. McNamara no longer is a defendant in this action, and Plaintiff's amendment dropping him as a party relates back to the filing of this

action.[2] Defendants' argument that this Court lacks subject matter jurisdiction due to an absence of complete diversity should be rejected.

In their supplemental reply brief, Defendants argue for the first time that subject matter jurisdiction is lacking because the requirement of $75,000 in controversy is not met. (No. 1:09CV973, Docket No. 40, Defs.' Supplemental Reply in Supp. of Mot. to Dismiss, at 2-5.) The Court allowed Plaintiff to file a surreply to address this issue. (Docket No. 42.) Plaintiff ImmunoScience contends that its amended complaint and its counterclaim in the consolidated action show that more than $75,000 is at issue. (*Id.*)

Plaintiff has the burden of establishing subject matter jurisdiction. Nonetheless, "the defendant is ordinarily bound by the amount claimed by the plaintiff unless 'it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed.'" *McDonald Brothers, Inc. v. Tinder Wholesale, LLC*, 395 F. Supp. 2d 255, 262 (M.D.N.C. 2005) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). In other words, "[u]nless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction over the case." *Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995).

---

[2] The Clerk will be instructed to update the docket caption to terminate Mr. McNamara as a Defendant in case number 1:09CV973.

Defendants base their amount-in-controversy argument upon Plaintiff's counterclaim filed in the Crutchfield action (No. 1:08CV561) and the deposition testimony of Dr. Apte, President of ImmunoScience, in that action. (No. 1:09CV973, Docket No. 40 at 2-5.) They rely upon his testimony that ImmunoScience suffered no damage from any of the documents that were signed by Mr. Crutchfield. (*Id*. at 4.) Defendants also argue that Plaintiff cannot recover the damages it seeks which arise out of the alleged conspiracy between Mr. Crutchfield and Ms. Szilagyi. (*Id*. (referring to their summary judgment motion).)

Defendants fail, however, to specifically address the alleged damages set out in Plaintiff's amended complaint.[3] Plaintiff alleges in its amended complaint that Mr. Crutchfield tendered approximately $80,000 of his personal funds to Ms. Szilagyi and/or Mr. McNamara on behalf of ImmunoScience to advance the capitalization funding of ImmunoScience. (First Am. Compl. ¶ 22.) In addition, Plaintiff contends that the allegedly fraudulent actions of Ms. Szylagi and SZ*B allowed Mr. Crutchfield to obtain stock options of ImmunoScience worth between $934,482 and $1,168,102. (Crutchfield Compl. ¶ 67; ImmunoScience counterclaim, ¶ 35.) Plaintiff claims that these amounts will be recoverable from Defendants if Mr. Crutchfield is successful in recovering these amounts from Plaintiff ImmunoScience. (Docket No. 82 at 2.) If Plaintiff is correct, there is considerably more than

---

[3] Defendants' unsupported contention that Plaintiff's damages are too speculative to be included in the amount-in-controversy calculation may have been directed to these amounts. (*See* 1:09CV973, Docket No. 40 at 4.)

-7-

$75,000 at issue in Plaintiff's action. Moreover, Plaintiff seeks punitive damages, and punitive damages are available under North Carolina law upon a showing of fraud, malice, or willful or wanton conduct, and may be included in the amount in controversy. *See* N.C. Gen. Stat. § 1D-15 and -25; *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983); *Williams v. Meyer*, No. 1:06CV00238, 2006 WL 2569089 (M.D.N.C. Aug. 30, 2006).

Defendants delve into the merits of Plaintiff's claims in their attempt to show that it is a "legal certainty" that Plaintiff cannot recover these and other amounts that Plaintiff claims as damages. (No. 1:09CV973, Docket No. 40 at 4-5.) Indeed, Defendants seek a ruling on their summary judgment motion before this Court decides the jurisdictional issue. (*Id.*) However, the Supreme Court and this Court have warned against summarily deciding the merits of the action "under the guise of determining jurisdiction." *Smithers v. Smith*, 204 U.S. 632, 645 (1907); *McDonald Bros.*, 395 F. Supp. 2d at 262. Therefore, the Court declines Defendants' invitation to rule on their summary judgment motion prior to considering whether this Court has jurisdiction over the amended complaint at issue.

Defendants do not accuse Plaintiff of making its claims concerning the amount in controversy in bad faith, and it is not plain from Plaintiff's first amended complaint that an amount less than the jurisdictional amount is at issue. Therefore, this Court has jurisdiction over the matter. *See Shanaghan*, 58 F.3d at 112.

-8-

Case 1:08-cv-00561-NCT-PTS   Document 83   Filed 01/30/12   Page 8 of 15

B.  **Personal Jurisdiction**

Defendants Szilagyi and SZ*B argue that this Court lacks personal jurisdiction over them because they do not have "minimum contacts" with North Carolina. (No. 1:09CV973, Docket No. 18 at 7-13.) In opposing a Rule 12(b)(2) motion for dismissal for lack of personal jurisdiction which is made on motion papers – including affidavits, legal memoranda, and the complaint – the plaintiff bears the burden of making a *prima facie* showing of personal jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). In determining whether a *prima facie* showing has been made, the court construes all relevant pleading allegations in the light most favorable to the plaintiff, assumes credibility, and draws the most favorable inferences in favor of jurisdiction. *Id*.

This Court must first consider whether the North Carolina long-arm statute, N.C. Gen. Stat. § 1-75.4, authorizes the exercise of jurisdiction over Defendants. *See Mylan Labs.,Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). The next inquiry is whether the exercise of personal jurisdiction comports with the requirements of the Due Process Clause. *See id*. North Carolina's long-arm statute is interpreted liberally in favor of finding jurisdiction. *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977). Federal courts consistently have construed the statute as extending jurisdiction to the full extent permitted by the Fourteenth Amendment. *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citing *Century Data Sys., Inc. v. McDonald*, 109 N.C. App. 425, 428 S.E.2d 190 (1993)). Therefore, the two-part test

generally collapses into a constitutional due process analysis. *Dillon*, 291 N.C. at 675-76, 231 S.E.2d at 630-31 (N.C. General Assembly by enacting section 1-75.4(1)(d) intended to grant courts jurisdiction over defendants to the extent allowed by due process).

The due process analysis protects a defendant against being subject to binding judgments in jurisdictions where the defendant "has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Due process demands certain "minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

"The touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994). In other words, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal citations omitted). In short, jurisdiction is proper only where a relationship exists between the defendant and the forum such that the

defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Personal jurisdiction may be exercised specifically or generally. Specific jurisdiction exists when the forum state asserts personal jurisdiction over the defendant in a suit "arising out of or related to" the defendant's contacts with the state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). For specific jurisdiction to be found, due process requires that the defendant purposely direct its activities at the forum. *Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 660 (4th Cir. 1989). By contrast, general jurisdiction is established where the defendant's contacts with the forum state have been "continuous and systematic" enough to support jurisdiction over claims that are unrelated to the continuous and systematic contacts. *Helicopteros*, 466 U.S. at 414. Thus, general jurisdiction requires "a more demanding standard than is necessary for establishing specific jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

The Fourth Circuit has approved of obtaining personal jurisdiction by the "showing of a conspiracy so that a conspirator not present in the forum State will, nevertheless, be adjudged to have had a personal presence in the forum State by means of adequate minimum contacts of the other conspirators therein." *Lolavar v. de Santibanes*, 430 F.3d 221, 229 (4th Cir. 2005). Under this ground for the exercise of personal jurisdiction, the plaintiff must "make a threshold showing that a conspiracy existed and that the defendants participated therein." *Id*.

-11-

Plaintiff argues, among other grounds, that it has established personal jurisdiction over Defendants by making a sufficient showing that a conspiracy existed between Mr. Crutchfield and Ms. Szylagi and SZ*B. (No. 1:09CV973, Docket No. 21 at 13.) Because this Court unquestionably may assert jurisdiction over Mr. Crutchfield as a resident of North Carolina, Plaintiff argues that Defendants Szilagyi and SZ*B are also considered to have a personal presence in the State based on its allegations of a conspiracy. (*Id*.)

Plaintiff relies upon affidavits, deposition testimony, and other documents to make a showing that a conspiracy existed and that Defendants participated in it. (*Id*.) Plaintiff shows that in September 2007 Ms. Szilagyi sent two letters to Mr. Crutchfield, one of which shows his address in North Carolina. (*Id*., Ex. A.) The first letter, with an SZ*B letterhead, is dated September 21, 2007. In it, Ms. Szilagyi is calling for a meeting "for ImmunoScience" in Phoenix, Arizona, for "future planing [sic] and an execution of some banking documents." (*Id*.) She calls for the only attendees to be herself, Mr. McNamara, and Mr. Crutchfield. (*Id*.) Ms Szilagyi states that Mr. Crutchfield "can report to the board our specific outcome and the purpose of this meeting in [sic] a later time." (*Id*.) Ms. Szilagyi signed the letter as the CEO of SZ*B Corporation. (*Id*.) The second letter is entitled a "Confirmation of the received confidential documents," and is dated September 29, 2007. (*Id*.) The letter states that confidential bank documents are included for Mr. Crutchfield to execute and then mail back to SZ*B Corporation in Switzerland. (*Id*.) Mr. Crutchfield's

signature appears on the document, confirming receipt of the documents on behalf of ImmunoScience. (*Id.*)

Mr. Crutchfield has given deposition testimony concerning his contacts with Ms. Szilagyi. (*Id.*, Ex. B.) He stated that he had spoken with her on the phone five or six times. (*Id.* at 242.) On other occasions he would communicate with her through Mr. McNamara. (*Id.* at 243.) He was in North Carolina during at least some of these calls. (*Id.*) Ms. Szilagyi knew that Mr. Crutchfield lived in North Carolina. (*Id.* at 243-44.) In his declaration, Mr. Crutchfield states that he received various documents from Ms. Szilagyi and Mr. McNamara for him to sign, some of which related to the opening of bank accounts. (*Id.*, Ex. E.) Mr. Crutchfield had been authorized by the ImmunoScience board to sign Swiss banking related documents on behalf of ImmunoScience. (*Id.* at 1.) However, Mr. Crutchfield stated that a "significant number of other documents related to matters which had not been considered and approved by the ImmunoScience Board of Directors." (*Id.* at 1-2.) He said that whenever he received documents from Mr. McNamara or Ms. Szilagyi he was told that time was of the essence and that he was directed on multiple occasions that he could not make copies of those documents and that their contents could not be disclosed to other ImmunoScience representatives and particularly not to Mr. Apte, the founder, president, CEO, and controlling shareholder of ImmunoScience. (*Id.* at 2.) Mr. Crutchfield states that on at least one occasion he received only the signature page of the document to sign. (*Id.*) When he later requested and received copies of documents that he had signed, the copies

-13-

were redacted of important information. (*Id.*) Plaintiff ImmunoScience contends that it was damaged as a result of Mr. Crutchfield signing these documents tendered by Ms. Szilagyi and SZ*B. (*See* ImmunoScience counterclaim in the '561 action.)

In response, Defendants do not contest the authenticity of the documents relied upon by Plaintiff, but argue that Plaintiff's evidence does not paint a complete and totally accurate picture of the relationship among Mr. Crutchfield, Mr. McNamara, and Ms. Szilagyi.[4] (No. 1:09CV973, Docket No. 22.) Defendants also do not directly address Plaintiff's theory of personal jurisdiction through the alleged conspiracy. (*Id.*) Defendants contend that the limited contacts between Ms. Szilagyi and Mr. Crutchfield and her limited contacts with North Carolina are not sufficient to establish specific jurisdiction over her. (*Id.*) Nonetheless, the Court is satisfied that Plaintiff's allegations and proffered evidence make a threshold showing of a concerted action by Mr. Crutchfield, Ms. Szilagyi and SZ*B, against the interests of Immunoscience. Because Mr. Crutchfield was a resident of North Carolina and, under the allegations before the Court, undertook substantial acts in furtherance of the conspiracy in North Carolina, Ms. Szilagyi and SZ*B are considered to have had a presence in North Carolina sufficient to assert jurisdiction over them. *See Lolavar*, 430 F.3d at 229.

---

[4] The case is not at a stage of adjudication on the merits. The ultimate merit of Plaintiff's conspiracy claim is not determinable at this time.

## Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' motion to dismiss (No. 1:09CV973, Docket No. 17) be denied.

The Clerk is directed to update the docket to show the termination of Mr. McNamara as a Defendant in case number 1:09CV973.

                                           /s/ P. Trevor Sharp
                                           United States Magistrate Judge

Date: January 30, 2012